Withers, J.,
dissenting. I am acquainted with the familiar maxims, ex 'dolo malo, or ex turpi causa, non oritur actio, -and in pari delicto potior est conditio defendentis. It may be doubted, nevertheless, whether these maxims will serve to settle this case. Ch. Kent, 2 Com. 467, states the law thus: “The courts of justice will-allow the objection that the consideration of the contract was immoral or illegal, to be made even by the guilty party to the contract; for the allowance is not for the sake of the party who raises the objection, but is grounded on general principles of policy.’’ .He cites first the favorite authority of Lord Mansfield, in Holman, vs. Johnson, Cowp. 343. That - case was a sale of *609 tea, at Dunkirk, by tbe plaintiff to the defendant, knowing the same was to be smuggled into England. The doctrine referred to wás laid down, but the plaintiff, nevertheless, recovered. He cites further, Josephs vs. Pebeer, 10 Eng. Com. Law, 209; Langton vs. Hughes, 1 Maule & Sel. 593, and Griswald vs. Waddington, 16 John. Rep. 486; in all which cases, I believe, the fact of illegality appeared by the plaintiff’s own showing. In the case from 16 John., the contract sought to be enforced was one between alien enemies, originating while flagrant war was pending between the United States and Great Britain. What said the Court in that case ? “ It would be difficult to staté any principle of law more plainly founded in common sense and true policy, than that which declares that a plaintiff must not appear, from his own showing, to have infringed the law of the land, and if he does, he cannot avail himself, etc. The plaintiff must recover upon his own merits ; and if he has none, or if he discloses a case founded upon illegal dealing, etc., he ought not to be heard, whatever the demerits of the defendant may be.” The only other case cited by Ch. Kent is, Mackey vs. Brownfield, 18 Sergt. & R. 239, which involved no matter of ille-' gality or immorality, for it was only a question of evidence; and the extent of the consideration of a perfectly valid mortgage was inquired into to show that less than it purported to secure had been, in fact, advanced; that is, the failure of consideration, or a fraud by one party on another, was- held to be matter of defence even against a specialty, which Duncan, J., said they allowed at law, because they had no separate court of chancery. Now, is there not this distinction, that where a plaintiff can make a prima facie case of right to recover what he sues for, free from the taint of illegality or fraud, the defendant shall not be heard to allege his own fraud or the mutual fraud of the parties, as matter of defence How was Broughton vs. Broughton, 4 Rich. 491; maintained, if noton that ground.? Or the. case of Doe d. Roberts vs. *610 Roberts, 2 Barn. & Alder. 867, which was potent in ruling Broughton vs. Broughton f I fear it is a distinction too refined, to put those cases upon a ground surmised, to wit, the difference existing between contracts executed and those ex-ecutory. In the case of Broughton, the party through whom the plaintiff claimed was in pari delicto with the defendant, and though in theory the paper called a conveyance vested the fee in the' plaintiffs, yet it would have for ever proved a barren deed, if the maxim had been applied to the plaintiff that those in pari delicto could neither of them attract the attention of the Court; that it was deaf to their entreaties, and should leave them statu quo. On the contrary, the Court, in that instance, was very active in behalf of the plaintiff, for the reason that it detected no taint about his case, as he made it prima facie; and would not hear the defendant prove that'the whole transaction arose in a fraud upon creditors. Strong to the same purport was the case from 2 Barn. & Aid. Said Best, “ there is only one case, that of fraud,” (we may add from our jurisprudence, also, failure of consideration,) “ where a deed can be avoided by parol testimony, but that cannot be done where both the parties are implicated in the fraud ;” and both, in that case, were implicated in an indictable conspiracy. He proceeds: “ The most favorable way in which this case can be put for the defendant would be to say, that this was a voluntary conveyance;. but even then it would be good.” To show that this distinction, founded upon executed and executory contracts, may not be sound, vide the case of Montefiori vs. Montefiori, 1 Wm. Blac. 863. A note by Joseph in favor of his brother, Moses, for a large- sum, founded on a pretence that Moses had a large sum of money in the other’s hands, the purpose being to mislead a lady with whom Moses was in treaty for marriage, and whom he did marry, was held to be valid; and Lord Mansfield said: “ Where, upon proposals of marriage, third persons represent any thing material in a *611 light different from tbe truth, even though it be by collusion with the husband, they shall be bound to make good the thing in the manner in which they represented it. It shall he as represented to be: For no man shall set up his iniquity as a defence, any more than as a cause of action.”
There should be, however, a sensible distinction observed between contracts, whether executed or executory, or partially executed; those under seal, at any rate, made (as the one before us was) with intent to defraud creditors, and those which drive the parties into direct conflict with the mala pro-hibita; such as contracts upon a gaming consideration, for stifling a prosecution, and the like. These are unlawful in their inception, void ah initio, and liable to be so treated every where and by every body, in the hands of a third person, as cause of action or as discount. It is the right of plaintiff or defendant so to treat them — the right of society, not of a particular class. The proposition I would advance is this, that when the object is merely to defraud creditors, or a third person, it shall not be considered that a deed (I need not now go beyond that) made in pursuance of it, as between the parties to it, is fraudulent at all. There shall be no knight-errantry, on the part of the Court, to hunt up a case for voluntary protection where none is called for or needed. As said by Lord Mansfield, it shall be as the parties have it, where no other person intervenes; they shall be held to their own terms. It is enough for the Court to lend a liberal ear to any body’s complaint, and fio vindicate the general law and the integrity of society when they are assailed; to explode a fraud upon a party when he asks that to be done. This will very well agree with Broughton vs. Broughton, and all our cases maintaining voluntary deeds, gifts by parol and so forth, which a donor or his representative shall not dispute upon grounds fit to be occupied by other persons only; and innumerable have been the actions, in trover and other forms, to enforce such transactions. Nor do such actions *612 seem to have been at all regardful of the difference between executed and executory contracts. So also will agree the rule maintaining transfers or liens, which may operate an 11 undue preference” by an insolvent debtor, for which he may be punished, but without avoidiug the transaction between the parties. Upon this ground we can escape the deluding influence of those agreeable maxims with which I set out, and the trouble to which they give rise when pushed to extremity. We may escape another incongruity, to wit, that we shall not explode a contract, repudiate the parties to it, leaving.them wholly helpless, treating them, as it were, as hostes humani generis, upon the sole ground that a fraud upon certain persons was meditated, merely intended, which may never have been, in fact, perpetrated, which the victim in view makes no. complaint about, and which he is fully competent to counteract whenever it may so please him. There is much encouragement for this position, as well as others herein taken, in Hawes vs. Leader, Cro. Jac. 270; Sherk vs. Endross, 3 Watts. & Serg. 255; Nicholls vs. Patten and others, 13 Maine. We shall thus give proper scope to the more amiable phase of the doctrine of estoppel, to the maxim often commended and adopted, (exempli gratia, Kiddvs. Mitchell, 1 N. & McC. 334,) that a party who conveys property to defraud his creditors is estopped to deny his right to convey. Again, it appears to me that we are also encouraged to maintain the ground I occupy by the equity doctrine set forth by Ch. Kent, thus : “A particeps criminis has been held to be- entitled, in equity, on his own application, to relief against his own contract, when the contract was illegal, or against the policy of the law, and relief became necessary to prevent injury to others.”
If the verdict in this case had been made to rest upon the belief of the jury that the bond had been paid, arising from the declaration by the obligee that nothing was due, it would then be one of the many cases in which this Court dismisses *613 tbe appeal because there was nothing but a question on evidence. But not concurring in the legal doctrines which have been made to control the cause, I should favor a new trial.
Wardlaw, J.
I agree that a bond, intended to defraud creditors, is not void between the parties, but in absence of complaint by any creditor, may be enforced. The declarations of intestate, when taken together, amount to no more than an acknowledgment of the purpose for which the'bond was made.
MuNRO, J., absent at the argument.

Appeal dismissed.